UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| L B H LLC | CASE NO. 2:23-CV-0436 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| VI FIBER LLC | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the Court is a "Plaintiff's Rule 12(B)(6) Motion to Dismiss, and/or in the Alternative, Rule 12(E) Motion for More Definite Statement" (Doc. 27) wherein Plaintiff, LBH LLC ("LBH") moves to dismiss Defendant/Plaintiff-in-Counterclaim, V1Fiber, LLC's claims of (1) recognition and enforcement of liens against Plaintiff under the Louisiana Private Works Act (La. Rev. Stat. 9:4801 et seq.) and Missouri Law, (2) exemplary or punitive damages, and (3) defamation and tortious interference with Contractor's business.

### INTRODUCTION

This matter involves a contract dispute over the construction of a Fiber-to-the-Home fiber optic network in western Louisiana. Plaintiff is a broadband and internet service provider that delivers affordable, reliable, high-speed fiber optic internet services to rural locations. Defendant, V1 Fiber, LLC ("Contractor" or "V1 Fiber"), is a provider of telecommunications industry construction, installation, general engineering, and maintenance services. On March 21, 2022, Plaintiff and Contractor entered into a Master Services Agreement (the "MSA") under which Contractor agreed to construct a fiber

broadband network and internet system in DeRidder, Louisiana (the "DeRidder Project") and Leesville, Louisiana (the "Leesville Project") (collectively, the "Louisiana Projects").[1] Under Section 1(b)(2) of the Agreement, Contractor agreed to perform "in a timely and productive manner and in accordance with any time scheduled in the Statement of Work."[2]

Contractor also agreed, per Section 1(b)(7) to provide "services … and end products that are satisfactory and acceptable to [Plaintiff] and free of defects, liens or encumbrances."[3] Following a dispute over the timeliness and quality of work performed by Contractor, Plaintiff terminated the Statements of Work for the Louisiana Projects. Plaintiff initially filed suit against Contractor in April 2023 to gain possession of its materials in Contractor's possession.[4] Plaintiff subsequently amended its Complaint to assert damages claims against Contractor resulting from its alleged breach of the Agreement.[5]

Contractor asserted a Counterclaim alleging that it performed work on the Louisiana Projects in accordance with the specifications of Plaintiff, as contemplated under the MSA.[6] It further alleges that it properly and timely submitted invoices related to work it performed on the Louisiana Projects, which Plaintiff never paid (the "Outstanding Invoices").[7] Contractor allegedly then made payments to its subcontractors based on the Outstanding Invoices and upon reliance that Plaintiff would reimburse Contractor.[8]

---

[1] Counterclaim, Doc. 19, § 5, First Amended Complaint of LBH (Doc. 25, ¶ 12).
[2] Doc. 19-1, p.2; Doc. 25, ¶ 8.
[3] *Id.*
[4] Doc. 1.
[5] Doc. 19, ¶ 17; Doc. 25, ¶ 19.
[6] Doc. 19, ¶ 7.
[7] Doc. 19, ¶ 8-16.
[8] Doc. 19. ¶¶ 13, 24.

Consequentially, Contractor recorded three different liens to recover payments for the Outstanding Invoices.

Contractor's Counterclaim alleges a Mechanics Lien Statement in Vernon County, Missouri Circuit Court in the amount of $264,379.35 (the "Missouri Lien");[9] a Statement of Claim and Privilege" in Beauregard Parish in the amount of $698,464.69 (the "Beauregard Parish Lien);[10] and a Statement of Claim and Privilege in the Vernon Parish Mortgage Records in the sum of $938,964.42 (the "Vernon Parish Lien").[11]

In addition to its contract claims, Contractor asserts claims for (1) recognition and enforcement of the Mechanics Liens against Plaintiff, (2) exemplary or punitive damages, and (3) defamation and tortious interference with Contractor's business. Specifically, Contractor asserts three separate claims for defamation and tortious interference: 1) "defamation by publication of false and harmful information to others, by claiming that V1FIBER, L.L.C., performed poor work, was in breach and failed to act to complete its work and address any possible punchlist;" 2) "tortious interference with contractual relations;" and 3) "tortious interference with prospective economic relations."[12]

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The

---

[9] Doc. 19-14, pp. 1-26.
[10] Doc. 19-4, p. 16.
[11] Doc. 19-4, p. 27-39.
[12] Doc. 19, ¶ 38.

court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## LAW AND ANALYSIS

*Recognition and Enforcement of Liens*

As to the Missouri Lien, Plaintiff moves to dismiss Contractor's cause of action because Contractor has no operations or presence in the State of Missouri. The Contract for the work performed in Missouri was not for Plaintiff, but involved N.W. Communications Company, who has not been named in this action. Additionally, the Missouri Lien is unrelated to the Louisiana Projects or to LBH.

In its opposition, V1 Fiber avers that it did not intend to litigate any issues associated with its claim on the Missouri project. V1 Fiber stipulates that it will not seek to enforce any claim it has against LBH. Accordingly, any claim by Contractor to recognize and

enforce the Missouri Lien will be dismissed, reserving V1 Fiber's right to file a separate action in the appropriate court in Missouri.

Next, Plaintiff moves to dismiss Contractor's causes of action regarding the Beauregard Parish and Vernon Parish Liens because Contractor failed to comply with the Louisiana Public Works Act ("LPWA"). Louisiana Revised Statute 9:4811(D) requires that "[w]ritten notice of a contract between a general contractor and an owner shall be filed as provided in R.S. 9:4831 **before the contractor begins work**." Louisiana Revised Statute § 9:4811(A). The consequences of the failure to do so "deprives the contractor of **any privilege** under the Act **without exception** and [contractor] is prohibited from filing a statement of claim or privilege. If the general contractor nonetheless files a statement of claim or privilege, **the owner is entitled to obtain its cancellation**." Louisiana Revised Statute 9:4811(D).

Contractor concedes that it did not record a Notice of Contract prior to commencing work.[13] As such, the Court will dismiss the claims for enforcement of its liens and V1 Fiber is entitled to have the Beauregard Parish and Vernon Parish Liens cancelled.

*Exemplary or punitive damages*

Under Louisiana law, exemplary or punitive damages are not recoverable in civil cases absent a specific statutory provision authorizing recovery of punitive damages." *Frazier v. City of Kaplan, Louisiana*, 19-cv-082, 2019 WL 2566528, at *3 (W.D. La. June 3, 2019). As such, federal courts, applying Louisiana substantive law, only permit a claim

---

[13] Opposition, p. 6, Doc. 32.

for punitive damages in limited situations. *Id.* Where none of those specific statutory exemptions apply, punitive damages are not available and a claim for exemplary or punitive damages is improper.

Plaintiff argues that the face of the Complaint does not allege a factual basis to support Contractor's claim for exemplary or punitive damages. Moreover, Contractor fails to assert the statutory grounds for its claims for exemplary or punitive damages. In its opposition, Contractor concedes that even though the MSA has some reference to Delaware law having some application, (Delaware does permit exemplary and/or punitive damages), that provision is not enforceable in accordance with Louisiana Revised Statute § 9:2779.[14] As such, Contractor's claims for exemplary or punitive damages will be dismissed.

*Defamation and tortious interference*

Contractor has alleged in its counterclaim claims of defamation and tortious interference. Plaintiff moves to dismiss these claims, or in the alternative, requests that the Court order Contractor to amend its counterclaim to satisfy the pleading standards the Federal Rules require.

To the extent Louisiana law permits a business to claim defamation based on damage to its business reputation, a claimant must allege the following: (1) defamatory words, (2) publication to a third party, (3) falsity, (4) actual or implied malice, and (5)

---

[14] La. R. S. § 2779 provides the following:
   A. The legislature finds that, with respect to construction contracts, subcontracts, and purchase orders for public and private works projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.

resulting injury. *Hoot Systems LLC. v. Comal Concrete Products, Inc*., 19-CV-00957, 2020 WL 1939180 at *3 (W.D. La. Apr. 22, 2020) (citing Cangelosi v. *Schwegmann Bros. Giant Super Markets*, 390 So.2d 196, 198 (La. 1980). For the first element, the claimant "must set forth in the petition with reasonable specificity the defamatory statements allegedly published by the defendant."*Id.* (citing *Badeaux v. S.W. computer Bureau, Inc*., 929 So.2d 1211, 1218 (La. 2006). It is not necessary for the claimant to "state verbatim the words on which he bases his cause of action, but he must allege a state of facts which would show fault under Louisiana tort law." *Id.*

To succeed on a claim for tortious interference with a business relationship, a claimant must prove by a preponderance of the evidence that defendants improperly influenced others not to deal with the claimant. *Bogues v. Louisiana Energy Consultants, Inc.*, 71 So.3d 1128 (La. App. 2 Cir. 08/10/11). *See also Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1 (5th Cir. 1992). The claimant must show that the defendants' actions did more than adversely affect the plaintiff's business; there must be a showing that defendants actually prevented the plaintiff from dealing with a third party. *Henderson v. Bailey Bark Materials*, 116 So.3d 30 (La. App. 2 Cir. 04/10/13). Louisiana jurisprudence has viewed this cause of action with disfavor and requires the claimant to prove that defendants were motivated by actual malice. *Id.* Actual malice must be pleaded in the complaint. *Bogues v. Louisiana Energy Consultants, Inc.*, *supra.*

Plaintiff argues that Contractor has failed to allege facts to support every element of a claim for defamation. Plaintiff directs the Court to paragraphs 19 and 25-35 of Contractor' Counterclaim wherein Contractor alleges that "In March and April 2023,

Page 7 of 10

representatives of [Plaintiff] contracted subcontractors whom had performed work on the subject project for [Contractor] and through these various communications, [Plaintiff] disparaged [Contractor] by, among other things, stating that the work performed by or at the direction of [Contactor] was of poor quality, [Contactor] was in breach of the MSA, [Contactor] was not paying its subcontractors, that it (presumably Plaintiff) would not work with [Contactor], and [Contactor] was insolvent."[15] Contractor further alleges that Plaintiff "encourage[ed] said subcontractors not to accept work from [Contractor]".[16] Contractor claims Plaintiff made these statements knowing they were false, without justification, and with reckless indifference as to the truth of the matters asserted and to the harm to Contractor.[17] Plaintiff allegedly made these statements to "municipalities and subcontractors" with the "intent and/or reckless indifference to harm [Contractor] and its reputation in the community and the greater industry community" and "with the intent to interfere with Contractor's existing and/or prospective contractual relationships with these municipalities and subcontractors."[18]

Plaintiff complains that Contractor does not elaborate on who these "municipalities" and "subcontractors" are, what its "reputation" in the "community" and "greater industry community" are, nor what "prospective contractual relationships" were ongoing at the time these allegedly defamatory and tortious statements were made. Plaintiff argues that these statements are overbroad as to the quality of Contractor's work and the solvency of

---

[15] Counterclaim, ¶ 25, Doc. 19.
[16] Id. ¶ 26.
[17] Id. ¶¶ 27-29.
[18] Id. ¶¶ 30, 34.

Contractor's business. In addition, Plaintiff argues that Contractor makes an unsupported conclusion that it suffered harm and that Contractor's statements only speculate that Plaintiff made them with "indifference as to the truth of the matters asserted." Plaintiff maintains that Contractor's allegations lack specificity as required by Louisiana law, and Plaintiff is left to guess what these statements refer and to whom, when, and where the statements were made. In other words, what are the contents of the statements and were they actually published to a third party.

Plaintiff also argues that the Counterclaim fails to specifically allege harm and that the statements were made with malice and prevented any third-party form doing business with Contractor. The Court agrees with Plaintiff that the Counterclaim is lacking sufficient factual allegations to establish a claim for defamation and tortious interference of with business relations. However, this case is in its infancy. The Court is hesitant to dismiss these claims at this stage of the proceedings and will allow Contractor to amend its counterclaim to cure the deficiencies noted herein.

## **CONCLUSION**

For the reasons stated herein, the Court will grant in part and deny in part the Rule 12(b)(6) Motion to Dismiss and grant the Rule 12(e) Motion for More Definite Statement to cure the deficiencies noted herein. The Rule 12(b)(6) Motion to Dismiss will be granted to the extent that

- V1 Fiber's claims for recognition and enforcement of lien as to the Missouri Lien will be dismissed, reserving V1 Fiber's right to pursue this claim in the appropriate Missouri court;

- V1 Fiber's claims for recognition and enforcement of liens as to the Vernon Parish Lien and Beauregard Parish Lien will be dismissed, with the right to cancel the liens;

- V1 Fiber's claims for exemplary or punitive damages will be dismissed;

- otherwise, the Motion to Dismiss will be denied.

**THUS DONE AND SIGNED** in Chambers on this 11th day of August, 2023.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE