UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **L B H L L C** | **CASE NO. 2:23-CV-00436** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **V1FIBER L L C** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Plaintiff's Second Rule 12(B)(6) Motion to Dismiss" (Doc. 42) filed by LBH, LLC, ("LBH") wherein Plaintiff moves to dismiss Defendant/Plaintiff in Counterclaim, V1Fiber, LLC's ("V1" or "Contractor") claims in its First Amended and Supplemental Counterclaim[1] for (1) defamation and tortious interference with Contractor's business, (2) enforcement of a purported "settlement agreement" between the parties, and (3) indemnity regarding the state court suit filed in Texas.

## INTRODUCTION

This matter involves a contract dispute over the construction of a Fiber-to-the-Home fiber optic network in western Louisiana. Plaintiff is a broadband and internet service provider that delivers affordable, reliable, high-speed fiber optic internet services to rural locations. Defendant/Counterclaimant, V1, is a provider of telecommunications industry construction, installation, general engineering, and maintenance services. On March 21, 2022, LBH and V1 entered into a Master Services Agreement (the "MSA") wherein V1 (Contractor) agreed to construct a fiber broadband network and internet system in

---

[1] Doc. 41.

DeRidder, Louisiana (the "DeRidder Project") and Leesville, Louisiana (the "Leesville Project") (collectively, the "Louisiana Projects").[2] Under Section 1(b)(2) of the Agreement, Contractor agreed to perform "in a timely and productive manner and in accordance with any time scheduled in the Statement of Work."[3]

Contractor also agreed, per Section 1(b)(7) to provide "services … and end products that are satisfactory and acceptable to [Plaintiff] and free of defects, liens or encumbrances."[4] Following a dispute over the timeliness and quality of work performed by Contractor, LBH terminated the Statements of Work for the Louisiana Projects. LBH initially filed suit against Contractor in April 2023 to gain possession of its materials in Contractor's possession.[5] LBH subsequently amended its Complaint to assert damage claims against Contractor resulting from its alleged breach of the Agreement.[6]

Contractor asserted a Counterclaim alleging that it performed work on the Louisiana Projects in accordance with the specifications of LBH, as contemplated under the MSA.[7] It further alleges that it properly and timely submitted invoices related to work it performed on the Louisiana Projects, which LBH never paid (the "Outstanding Invoices").[8] Contractor allegedly that it made payments to its subcontractors based on the Outstanding Invoices and upon reliance that LBH would reimburse it.[9] Consequentially, Contractor recorded three different liens to recover payments for the Outstanding Invoices.

---

[2] Counterclaim, Doc. 19, § 5, First Amended Complaint of LBH (Doc. 25, ¶ 12).
[3] Doc. 19-1, p.2; Doc. 25, ¶ 8.
[4] *Id.*
[5] Doc. 1.
[6] Doc. 19, ¶ 17; Doc. 25, ¶ 19.
[7] Doc. 19, ¶ 7.
[8] Doc. 19, ¶ 8-16.
[9] Doc. 19. ¶¶ 13, 24.

In its First Amended and Supplemental Counterclaim, in addition to its contract claims, Contractor asserts claims for (1) defamation and tortious interference with Contractor's business, (2) enforcement of a purported "settlement agreement," and (3) indemnity regarding the state court suit filed in Texas. Specifically, Contractor asserts three separate claims for defamation and tortious interference: 1) "defamation by publication of false and harmful information to others, by claiming that V1FIBER, L.L.C., performed poor work, was in breach and failed to act to complete its work and address any possible punchlist;" 2) "tortious interference with contractual relations;" and 3) "tortious interference with prospective economic relations."[10]

## **RULE 12(b)(6) STANDARD**

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts

---

[10] Doc. 19, ¶ 38.

'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## LAW AND ANALYSIS

LBH moves to dismiss (1) Contractor's claims for defamation and tortious interference, (2) enforcement of an alleged settlement agreement, and (3) any claim for indemnity Contractor allegedly incurred to defend a Texas state court lawsuit brought against Contractor by a subcontractor.

*Defamation and tortious interference*

In its Counterclaim, V1 alleges that on or about March 29, 2023, it made formal demand against LBH for $2,025,170.25, which reflected outstanding invoices owed by LBH.[11] V1 further alleges that despite the invoices being approved by representatives of LBH, LBH was in breach of the MSA for failure to pay the invoices.[12] Additionally, V1 alleges that LBH agreed to reimburse V1 for payments it made to its subcontractors, but failed to do so.[13]

The Counterclaim further alleges that in March and April 2023, LBH representatives contacted local and/or municipal government officials in Louisiana and communicated that V1 preformed poor quality work, was in breach of the MSA, was not

---

[11] *Id.* ¶ 22.
[12] *Id.* ¶ 25.
[13] *Id.*

paying its subcontractors, that it (LBH) would not work with V1, and that V1 was insolvent.[14]

On September 8, 2023, Contractor filed its "First Supplemental and Amended Counterclaim" ("Amended Counterclaim").[15] The Amended Counterclaim makes the following new allegations regarding an email sent to the Mayor of New Llano, Louisiana from Keith Soldan, Vice President of LBH, in which Soldan stated as follows:

> (A)s we highlighted, V1, our former General Contractor was terminated from the project due to repeated delays, negligence, poor quality or workmanship and not following industry standard best practices. Additionally, V1 who clearly has financial limitations has not been resolving invoices with their subcontractors and even attempted to thwart our efforts to pay the subcontractors in our attempts to keep the working members of your community whole. Cory, whom you have met, was able to reach out directly to the subcontractors whereby we are now working with them directly to resolve any of the outstanding invoices owed to them by V1. We are even paying sub-contractor invoices that were already part of invoices settled to V1 they did not pay to the subcontractors. Furthermore, they have illegally detained our equipment and assets in the Leesville area for which we received a favorable judgement from the Federal Judge requiring V1 to provide access to regain control of our personal property.
>
> As we have discussed I have attached documentation that supports our claims.[16]

The "other documentation" included correspondence dated March 30, 2023, from Soldan to a representative of V1. This correspondence stated the following:

> "I am attaching invoices from two subcontractors that have alleged V1 has refused to pay due to lack of funds and liquidity for any invoices with due dates after March 17th.
>
> I am a bit shocked to see the subcontractors unpaid as I have offered both verbally on 3/20 in the weekly call and via written notice in the attached

---

[14] *Id.*
[15] Doc. 41.
[16] Plaintiff's exhibit D, ¶ 27 of the Amended Counterclaim, Doc. 41-15.

> email to pay any subcontractors for unpaid labor on either the DeRidder and Leesville projects.
>
> Ed, I believe you directly quoted in our meeting on 3/20 that all subcontractors have received payment. That is obviously not the case and Fastwrye will stand by the subcontractors and see they are not impacted by V1's lack of cash management.
>
> Furthermore, I find it reprehensible that V1 would refuse to allow their subs to be paid and be kept whole for work completed and in two occasions encourage subcontractors to file liens when Fastwyre offered to stand in. I am attaching the invoices that have been presented to Fastwrye. I ask that V1 verify that these have not paid to date so I may the take the appropriate action and limit any fallout to others from the termination of V1 in Leesville.
>
> ***Once again if other subcontractors are seeking payment Fastwyre will standby and settle valid invoices.***
>
> To this point I have still not received any valid support for the costs associated with our equipment being held unlawfully in Leesville."[17]

The Amended Counterclaim further alleges that in a correspondence to Mayor of New Llano, V1 failed to inform the Mayor that LBH was

> inappropriately holding over $2,000,000 in unpaid invoices which it owed V1 FIBER, L.L.C., which money would be then used by V1 FIBER, L.L.C. to pay project costs, including its subcontractors. On top of that, Mr. Soldan also provided to Mayor Todd his self serving March 30, 2023 email to representatives of V1 FIBER, L.L.C. in which he again attempted to promote Soldan's narrative of financial problems for V1 FIBER, L.L.C. when it was LBH, L.L.C. D/B/A FASTWYRE BROADBAND LBH who had failed to pay its debts to V1 FIBER, L.L.C. Mr. Soldan admitted that LBH, L.L.C. D/B/A FASTWYRE BROADBAND was "reaching out" the contractors of V1 FIBER, L.L.C., and upon information and belief, representatives of LBH, L.L.C. D/B/A FASTWYRE BROADBAND continued this campaign of a false narrative against the interests of V1 FIBER, L.L.C. by indicating to V1 FIBER, L.L.C.'s own subcontractors that V1 FIBER, L.L.C. was insolvent, and that V1 FIBER, L.L.C. was not paying its subcontractors; and

---

[17] Plaintiff's Exhibit E, ¶ 29, attached to Amended Complaint, Doc. 41-16.

encouraging V1 FIBER, L.L.C.'s own subcontractors not to accept work from V1 FIBER, L.L.C.[18]

The Amended Counterclaim alleges that on or about March 29, 2023, V1 made formal demand against LBH for $2,025,170.25, which reflected outstanding invoices owed by LBH.[19] V1 further alleges that despite the invoices being approved by representatives of LBH, LBH was in breach of the MSA for failure to pay the invoices.[20] Additionally, V1 alleges that LBH agreed to reimburse V1 for payments it made to its subcontractors, but failed to do so.[21] The Amended Counterclaim alleges that the statements LBH made to the New Llano Mayor, the municipalities and V1's subcontractors were false and/or contained material misrepresentations.[22]

V1 argues that the Amended Counterclaim alleges sufficient facts to support a claim for monetary damages based on business defamation and/or tortious interference with contractual relations. V1 notes that it has alleged two separate communications by LBH wherein it made false statements made for the purpose of injuring V1, and that those false statements could only be made for no other purpose than with malice to cause V1 harm by destroying its reputation. Additionally, V1 remarks that the April 14th correspondence confirms that communications from LBH took place, and that LBH had been communicating with V1's subcontractors.  V1 states that discovery will yield additional

---

[18] *Id.*
[19] *Id.* ¶ 22.
[20] *Id.* ¶ 25.
[21] *Id.*
[22] *Id.* ¶ 31.

information concerning those communications and that it should not be precluded at this stage of the proceeding from discovering any additional facts to support its claims.

Statements, which by their very nature, "tend to injure one's personal or professional reputation . . . are considered defamatory per se." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 675 (La. 2006)). Alternatively, a plaintiff can recover damages for tortious interference with business relations upon a showing that "the defendant improperly influenced others not to deal with plaintiff." *Markovich v. Villere*, 273 so.3d 333, 345 (La. App. 1st Cir. 2019) (quoting *Bogues v. La. Energy Consultants, Inc.*, 71 So.3d 1128, 1134 (La. App. 2nd Cir. 2011)).

Accepting the allegations in the Amended Counterclaim as true for purposes of this Motion, the Court finds that V1 should be allowed to proceed with its claim for defamation and tortious interference and the discovery process.

*Settlement agreement*

V1 claims that BLH sent a letter on March 21, 2023, offering to pay the outstanding invoices of V1's subcontractors and its costs and that V1 accepted this purported "offer" in an April 11, 2023 letter.[23] Therefore, V1 claims this exchange constitutes a settlement agreement between the parties, which it seeks to enforce.[24] LBH argues that there was no settlement agreement between the parties and moves to dismiss V1's claim to enforce the alleged settlement agreement.

---

[23] Doc. 41-28; Doc. 41-17.
[24] Doc. 41, Amended Counterclaim, ¶¶ 42-46.

Under Louisiana law, a compromise – or "settlement" – is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. Louisiana Civil Code article 3072 A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings. Louisiana Civil Code article 3072. Because a compromise is a contract, it is formed by the consent of the parties established through offer and acceptance. Louisiana Civil Code article 1927. Thus, before a court can find the existence of a valid written contract agreement, it must find an offer and an acceptance. *Aloisio v. Christina*, 146 So.3d 564, 566 (La.App. 1 Cir.2/3/14). Moreover, Louisiana Civil Code article 1943 provides that an acceptance not in accordance with the terms of the offer is deemed to be a counteroffer. In order for a contract to be formed, an acceptance must be in all things conformable to the offer. *ECW Recoveries v. Woodward*, 196 So.3d 122, 125 (La. App. 1 Cir. 6/3/16). An offer must be accepted as made to constitute a contract. Louisiana Civil Code article 1927. A modification in the acceptance of an offer constitutes a new offer which must be accepted in order to become a binding contract. *LaSalle v. Cannata Corp.*, 878 So.2d 622, 624 (La. App. 1 Cir. 4/2/04).

The alleged settlement agreement originates from a letter sent by LBH on March 21, 2023, after LBH terminated V1's services. In the letter, LBH states that it "is disputing a number of invoices related to the Statements of Work" and offered to pay VI's subcontractors for outstanding bills, or alternatively reimburse Contractor for payments

made to subcontractors, as well as to pay for Services completed that were not in dispute.[25]

In response, on April 11, 2023, V1 sent a letter to LBH, which alleged that LBH had breached the terms of the Master Service Agreement by terminating it, and V1 agreed, as "a partial resolution of some of the disputes, with LBH"[26] to accept LBH's offer "to pay the subcontractor invoices, including reimbursing [V1] for payments made to subcontractors for services upon receipt o [sic] documentation illustrating proof of payment by [V1]."[27] The April 11, 2023 letter further states the following:

> This settlement offer for a partial resolution of the amount owed by [LBH] dba Fastwyre Broadband, to V1 Fiber, L.L.C. representing the amounts billed by the subcontractors to [V1] will expire at 5:00 p.m. CST, on April 14, 2023. Payment must be submitted within 15 days of this date. In addition, the terms of the associated partial settlement agreement will include a confidentiality agreement and a non-disparagement agreement.
>
> Furthermore, it is a specific condition of this settlement offer for a partial resolution of the amounts owed by [LBH] to [V1] that any agreement for a partial settlement of this matter is subject to a full reservation of rights by [V1] to enforce collection of any and all outstanding invoices submitted to [LBH] by [V1], but conditioned upon ay reductions from the total balance owed of $2,025,170.25 representing payments by [LBH] to [V1], for work performed and invoiced by the subcontractors of [V1].[28]

V1 argues that the two letters evidence an agreement between V1 and LBH related to the payment of subcontractor invoices, noting that the only formal essential for a compromise is a writing, citing *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 720 So.2d 372, 374 (La.App. 4 Cir. Sept. 30, 1998). LBH argues that Contractor did not accept the offer, but the April 11 letter made a counteroffer, which included additional

---

[25] Doc. 41-28.
[26] Doc. 41-17, p.1.
[27] *Id.*
[28] *Id.* p. 2.

terms. Specifically, the response letter demanded payment within 15 days, the return of LBH's materials in Contractor's possession, and sought payment for the remaining balance owed V1. Additionally, the letter sets an expiration date and proposes additional terms including a requirement for confidentiality and non-disparagement. Finally, the letter notes the specific condition that the proposed offer was subject to a full reservation of rights by V1 to enforce collections of any and all outstanding invoices submitted to LBH. Thus, LBH argues that V1 did not accept its offer, as written.

In between the March 21 and April 11th letters, V1 sent LBH a letter dated March 29, 2023, demanding immediate payment of $2,025,170.25 to be submitted within 15 days. That offer expressly stated that it would expire on April 3, 2023. LBH posits that the March 29th offer was a counteroffer/rejection of its March 21st offer. Consequently, LBH maintains that no contract or settlement was formed because it did not accept that offer or the April 11th offer. The Court agrees with LBH that there was no offer and acceptance or a meeting of the minds. The March 29th letter from V1 demanding immediate payment was a clear rejection of the March 21st purported offer. Additionally, the April 11th letter by V1 contained additional terms which required an acceptance, no later than April 14. Thus, the Court finds that V1's claim to enforce the alleged settlement agreement must be dismissed, because there was no enforceable settlement agreement.

*Indemnification*

LBH moves to dismiss V1's claim for indemnification related to the Texas state court litigation against V1. V1 informs the Court that it is not making a claim for indemnification in this lawsuit.[29] As such, the Court will deny this portion of LBH's motion as moot.

## CONCLUSION

For the reasons explained herein, the Court will grant Plaintiff's Second Rule 12(B)(6) Motion to Dismiss (Doc. 42) in part and deny the Motion in part. The Motion will be granted to the extent that the Court will dismiss V1's claim to enforce the purported settlement agreement; the motion to dismiss V1's claim of defamation and tortious interference will be denied; and the motion to dismiss V1's claim for indemnification will be denied as moot.

**THUS DONE AND SIGNED** in Chambers this 3rd day of November, 2023.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE

---

[29] Opposition to Motion to Dismiss, p. 12.